CASE No. 837.

THE STATE, *EX RELATIONE* MARSHALL, v. STARLING.

1. County commissioners cannot be required to give a check unless there are funds in the treasury appropriated for the particular subject to which the claim belongs.
2. Excesses in any specific appropriation, in the county treasury for a fiscal year, are applicable to other county claims for that year; an excess over all claims goes over to the next fiscal year.
3. Funds being in the county treasury for the fiscal year ending October 31st, undrawn, but insufficient to pay audited claims for that fiscal year, and no funds being yet collected for the fiscal year commencing November 1st, upon petition filed in January, a *mandamus* was granted requiring the county commissioners to draw their warrant for one-third, or the October portion, of a trial justice's salary, which was fixed by law and due for the quarter ending December 31st.
4. A salary fixed by law need not be audited, as the county commissioners have no discretion to allow or reject it; when funds are in their treasury, applicable to its payment, it is their duty to draw a check therefor.

---

Original application to the Supreme Court, January, 1880.

Application for a writ of *mandamus* requiring W. D. Starling, N. J. Dubard and T. A. Scott, county commissioners of Richland county, to pay the salary of the petitioner.

*Mr. F. W. Fickling,* for relator.

*Mr. John R. Abney,* for respondents.

March 24th, 1880.    The opinion of the court was delivered by

McGOWAN, A. J.    This is a petition by J. Q. Marshall, a trial justice in the city of Columbia, for a writ of *mandamus* to

compel the county commissioners of Richland county to draw their check upon the treasury of the county in his favor for $200 for his quarter salary, as trial justice, for the months of October, November and December, 1879, which became due and payable on January 1st, 1880.

The respondents made return, insisting that the rule should be discharged on the grounds—

*First.* That the relator did not, as he should have done, allege in his petition that there were county funds in the treasury applicable to his claim.

*Second.* Denying statement of fact as to the alleged promise to issue check for the claim.

*Third.* Denying that there is any money in the treasury "appropriated for or applicable to the payment of said claim."

*Fourth.* That out of the taxes for the last fiscal year, the relator had received all his salary except for the month of October, while other creditors of the county had received nothing.

*Fifth.* That there is no excess from the last fiscal year to come over into this fiscal year.

*Sixth.* That no taxes have been collected for the present fiscal year.

The return is not traversed, and the facts stated must be assumed to be true.

The relator filed a reply in the nature of a demurrer, making only questions of law.

The county commissioners' act (15 *Stat.* 989,) provides "that the county commissioners shall not draw any order upon the county treasurer unless he has the funds in the treasury appropriated for the particular object to pay the same, and to enable him to determine whether there is the specific fund upon which to draw, the county commissioners shall indicate on the face of each order the nature of the claim in payment of which it has been given."

And again, Section 23, page 993 : "And it shall not be lawful for any county treasurer to pay any claim against the county except upon the checks of the county commissioners, which shall bear upon their face not only the number, amount and

name of the party in whose favor they are drawn, *but the nature of the claims for which they are drawn, and the fiscal year in which they were contracted or incurred."*

The county commissioners connot be required to give a check unless there are funds in the treasury appropriated for the particular subject to which that claim belongs. The general rule is that the actor must state everything necessary to make out his case, but whether particular funds are in the treasury may not be known to the claimant, is matter of evidence, and the omission of the allegation is not necessarily fatal.

The question is, were there funds in the county treasury January 1st, 1880, applicable to the class of claims to which that of relator belongs? As a fact it is denied, and it can only be determined by applying the law to the statements of the return. The scheme of the act seems to be, that the commissioners, subject to the limit fixed by the legislature, shall indicate how much money in the year ought to be raised for the county, and distributed among the different objects as provided by law— subject to the controlling duty of keeping distinct the amount collected and the disbursements of each fiscal year. If in any of the sub-divisions of the funds, other than that for fees, disbursements, &c., there should be more than enough to pay all dues of the class for which it was set apart, the excess falls into the residuary fund for the "payment of fees, disbursements," &c., and is applicable to the payment of any other legal claims against the county, and in the event of any excess in this last-named fund, it "shall be applied by the county commissioners to the payment of all claims of that character arising in the next ensuing fiscal year." The excesses of particular funds in a fiscal year are applicable to all claims of that year, and it is only the general excess that goes over to the next year. All claims of the fiscal year, without regard to their character, must be first paid. Some confusion arises in this case from the fact that the *calendar* is not indentical with the *fiscal* year. The fiscal year commences November 1st, and ends October 31st of the next year. The ordinary expenses, state and county, are provided for as a whole for the fiscal year. The " Act to regulate the appointment and salary of trial justices in the city

of Columbia," approved February 23d, 1875, (15 *Stat.* 858,) was evidently framed with reference to the calendar year. It provides for each trial justice in the city of Columbia, a " salary of $800 per annum, payable quarterly, on the first days of January, April, July and October, by the county treasurer of Richland, and out of the county funds."

The salary of the relator has been paid up to October 1st, of last year, leaving three months still due—October, November and December, 1879, payable January 1st, 1880. October was in the last, and November and December are in the present fiscal year.

In order to comply with the law requiring each fiscal year to be kept separate, the claim must be divided. No taxes have been collected for the present fiscal year, and therefore there can be no funds applicable to claims of this fiscal year, unless they are there as an excess from the last year. It does not appear that the provision for Richland county in the last fiscal year will discharge all the obligations of that year and leave an excess. The return states that " there will be no excess from the collections of last year to apply to relator's claim." November and December being in the present fiscal year, and there being no funds on hand for that year, no *mandamus*. should issue requiring the county commissioners to sign checks in payment of relator's salary for these months—November and December.

The result may be different as to the salary for the month of *October*, which was in the last fiscal year. It was not payable until January 1st, 1880, but that circumstance cannot make it a debt of this fiscal year. The statements of the return are not clear as to the balance of accounts for the year ending October 31st, 1879, but it does appear that there is *in the treasury the sum of* $1451.04 *arising from excesses in some of the sub-divisions*, which, as we have seen, may be appropriated to any other legal claim against the county of that fiscal year. It seems that the commissioners have already approved claims to the amount of the funds in the treasury which are still unpaid. It is not explained why they have not issued checks for these approved claims; but it is admitted that the funds in the treasury have

not been actually applied by order or check for the payment of any particular claims.

The relator's salary for October, 1879, is a claim for that fiscal year, and there being money in the treasury for the payment of the class of claims to which it belongs arising from excess over the amount drawn for by checks or orders, the county commissioners should draw a check upon the treasurer for $66.66 in favor of relator for the same.

It is claimed in behalf of the respondents that it is for them to decide whether they will apply the said residuary fund, and if so, to what creditors they will pay it; that is a matter within their "discretion" and beyond control. The fund is not equitable assets for distribution *pro rata* among creditors. *County Commissioners* v. *Winnsboro' National Bank,* 7 *S. C.* 79.

In *Moses on Mandamus* 104, it is said: "Where county commissioners have a discretion and proceed to exercise it, courts have no jurisdiction to control that discretion by a writ of *mandamus;* but if they refuse to act or to entertain the question for their discretion in cases where the law enjoins upon them to do the act required, courts may enforce obedience to the law by *mandamus* where no other legal remedy exists."

*High on Extraordinary Remedies* 105, says: "Frequent applications of the rule occur in cases of *salaries due to public officers,* and in cases of this nature where the amount of the salary is *definitely fixed* and *appropriated by law,* the drawing of the warrant upon the public treasury is unattended with the exercise of any official discretion, and may, very properly, be enforced by *mandamus.*"

The county commissioners have no discretion to allow or reject this claim. It is for a *salary* and need not be audited. It is fixed by law and ordered to be paid. When there is money in the treasury subject to the payment of legal claims against the county and not actually applied to other claims, it is the duty of the county commissioners to check for a salary fixed in amount and ordered to be paid by the county as a ministerial act positively required by law. The peremptory writ of *mandamus* should issue requiring the county commissioners of Richland county to draw their check upon the county treasurer, in favor

of the relator, for $66.66—his salary as trial justice for the month of October last.

WILLARD, C. J., and McIVER, A. J., concurred.